*58 ROGERS, Circuit Judge,
concurring in part and dissenting in part.
I am in agreement with the court’s denial of a certificate of appealability in No. 01-3127 to Jonathan Jay Pollard to contest the district court’s dismissal of his second motion under 28 U.S.C. § 2255, and I therefore join Part II.A of the court’s opinion. However, the court erects a jurisdictional bar in Nos. 01-3103 and 03-3145 to considering the request of Pollard’s counsel for access to classified documents, which were filed with the district court during his sentencing and were sealed pursuant to a Protective Order, for use in preparing a clemency petition. Although the United States acknowledges that the documents are “subject to a court-issued Protective Order,” Br. of Appellee at 42, and it therefore makes no jurisdictional challenge, see id. at 44 n. 25, the court nevertheless hypothesizes a conflict with the President’s clemency power under the Constitution, see Op. at 56-57. Neither Pollard’s counsel’s request to the district court nor the court’s potential granting of it, however, poses interference with the President’s clemency power. Whatever documents compiled for Pollard’s sentencing that the district court might make accessible to his counsel for purposes of preparing a clemency petition, the President’s process for considering clemency petitions and any decision he might make remain unimpaired; indeed, he can ignore the petition altogether. Rather than posing a jurisdictional bar, the President’s clemency power affects the merits of counsel’s request because, as the district court ruled, counsel has not shown a “need to know” under Executive Order 12,958, as amended, which has been incorporated into the Protective Order. Hence, under the “unusual circumstances of this case” where the Protective Order governs the requested documents, Br. of Appellee at 42, I would hold that the district court had jurisdiction to address the merits of the access motion and that the court did not err in denying the motion. I therefore respectfully dissent from Part II.B of the court’s opinion.
I.
For purposes of preparing a clemency petition, Pollard’s counsel seeks access to classified documents that were created for his sentencing, filed with the district court, and sealed pursuant to a Protective Order. The sealed documents include a Declaration of then-Secretary of Defense Caspar Weinberger, a memorandum personally prepared by Pollard, a memorandum prepared by Pollard’s trial counsel, and the United States’s reply. Pursuant to the Protective Order, persons not identified therein, such as Pollard’s current counsel, may obtain access to the classified portions of the sentencing documents only after being granted the appropriate security clearance by the Department of Justice through the Court Security Officer, executing a Memorandum of Understanding prohibiting disclosure of such information, and obtaining the permission of the district court. The parties agree that as part of the security clearance process, a person must have a “need to know” the information contained in the classified documents as that phrase is defined in Executive Order 12,958, as amended, to mean “a determination made by an authorized holder of classified information that a prospective recipient requires access to specific classified information in order to perform or assist in a lawful and authorized governmental function.” Exec. Order 13,292, 68 Fed.Reg. 15,315, 15,332 (Mar. 25, 2003).
In holding that the district court lacked jurisdiction to consider Pollard’s counsel’s motion for access to the classified documents under the Protective Order, the court concludes that counsel’s expressed desire to use the documents for a clemency *59 petition is determinative of the jurisdictional inquiry because the court “lack[s] the authority to compel the executive branch to disclose any documents for the purposes of a clemency petition.” Op. at 56. The United States, however, did not urge this restrictive interpretation of the district court’s jurisdiction and thus neither party briefed it. In fact, the United States expressly stated on appeal that it “did not contest the district court’s jurisdiction over the access issue in this case because the terms of the Protective Order reserve that role for the court.” Br. of Appellee at 44 n. 25. The court nevertheless proceeds sun sponte to resolve this dispute on novel jurisdictional grounds, and, in so doing, ignores the fact, undisputed by the parties and the record, that the documents at issue were created as part of a judicial process and are governed by the Protective Order. Cf. 18 U.S.C. app. Ill, § 3 (2000).
This case, therefore, does not involve the traditional request for access to classified documents that are within the Executive Branch’s possession, and hence, the court’s concern that exercising jurisdiction over the access motion could open the floodgates to similar motions, see Op. at 56 - 57, is misplaced. Further, as the United States acknowledged at oral argument, protective orders now are drafted “more carefully ... to circumscribe their use more directly to the ... criminal case, and not for other purposes,” Tr. of Proceedings (Mar. 15, 2005), and, thus, it is quite unlikely that courts will be confronted with even a trickle, much less a flood, of similar requests. Although the documents are nominally in the custody of the Justice Department’s Security and Emergency Planning Staff, the district court, as the United States acknowledges, has continuing control over them on account of the perpetual Protective Order that it may still enforce through its contempt power. See Public Citizen v. Liggett Group, Inc., 858 F.2d 775, 781-82 (1st Cir.1988); cf. Nixon v. Warner Communications, Inc., 435 U.S. 589, 598, 98 S.Ct. 1306, 55 L.Ed.2d 570 (1978). “[A] protective order, like any ongoing injunction, is always subject to the inherent power of the district court,” Poliquin v. Garden Way, Inc., 989 F.2d 527, 535 (1st Cir.1993), and “[s]o long as [the court’s records and files] remain under the aegis of the court, they are superintended by judges who have dominion over the court,” Gambale v. Deutsche Bank AG, 377 F.3d 133, 141 (2d Cir.2004). Thus, in the absence of legitimate separation-of-powers concerns, the district court, under these circumstances, had jurisdiction to adjudicate the access motion, for otherwise it would be in the untenable position of lacking jurisdiction over motions that relate to documents that were filed with it and over which it has continuing control. Although the court professes to be unable to find a “principled way” to limit the potential right of access to documents filed pursuant to a Protective Order, Op. at 56 n. 1, as is clear from the above cases, the principle is that the Protective Order results in the district court’s retention of control, and thus jurisdiction, over the documents at issue so long as there is no violation of the separation of powers.
To reach its jurisdictional conclusion, the court imagines a conflict between that President’s clemency power and the district court’s exercise of jurisdiction over the request for access to documents. It is undeniable that the President’s constitutional power to grant clemency is robust, U.S. Const, art. II, § 2, cl. 1, and that courts long have been loathe to review the President’s clemency decisions, see, e.g., Schick v. Reed, 419 U.S. 256, 260, 95 S.Ct. 379, 42 L.Ed.2d 430 (1974); United States v. Klein, 13 Wall. 128, 80 U.S. 128, 147-48, 20 L.Ed. 519 (1871); cf. Ohio Adult Parole Auth. v. Woodard, 523 U.S. 272, 284, 118 S.Ct. 1244, 140 L.Ed.2d 387 (1998) (plurali *60 ty); id. at 289, 118 S.Ct. 1244 (O’Connor, J., joined by Souter, Ginsburg, and Breyer, JJ., concurring in part and concurring in the judgment). The President’s clemency power, however, is not absolute; rather, it is limited by other constitutional provisions. Schick, 419 U.S. at 266-67, 95 S.Ct. 379. In reviewing clemency decisions to ensure that they comport with other constitutional protections, the Supreme Court has never suggested that federal courts lack jurisdiction over such matters, let alone over matters where a prisoner’s counsel seeks access to documents filed with the district court for use in petitioning for executive clemency. See, e.g., id; Hart v. United States, 118 U.S. 62, 67, 21 Ct.Cl. 505, 6 S.Ct. 961, 30 L.Ed. 96 (1886); Knote v. United States, 95 U.S. 149, 154, 13 Ct.Cl. 517, 24 L.Ed. 442 (1877); Ex parte Garland, 4 Wall. 333, 71 U.S. 333, 381, 18 L.Ed. 366 (1866); Ex parte Wells, 59 U.S.(18 How.) 307, 312, 15 L.Ed. 421 (1855).
At the same time, the Supreme Court has cautioned courts “to avoid interference with the ... clemency powers vested in the Executive Branch,” Affronti v. United States, 350 U.S. 79, 83, 76 S.Ct. 171, 100 L.Ed. 62 (1955) (emphasis added), and has stated that “pardon and commutation decisions ... are rarely, if ever, appropriate subjects for judicial review.” Conn. Bd. of Pardons v. Dumschat, 452 U.S. 458, 464, 101 S.Ct. 2460, 69 L.Ed.2d 158 (1981) (emphasis added). While “the separation-of-powers doctrine requires that a branch not impair another in the performance of its constitutional duties,” Loving v. United States, 517 U.S. 748, 757, 116 S.Ct. 1737, 135 L.Ed.2d 36 (1996) (emphasis added), the court today never explains how the district court’s exercise of jurisdiction over the access motion impairs or interferes with the President’s clemency power, and, indeed, it cannot because the motion does not involve the President’s constitutional prerogative to grant clemency or even the process by which the President decides whether or not to grant clemency, cf. Affronti, 350 U.S. at 83, 76 S.Ct. 171; United States v. Moussaoui, 382 F.3d 453, 468-69 (4th Cir.2004). Nor did the United States suggest to the contrary in response to the court’s jurisdictional observation during oral argument. The access motion does not relate to the President’s decision regarding clemency, as he remains free to review, ignore, act on, or fail to act on any petition for clemency that Pollard’s counsel might file, regardless of whether a court determines that his counsel may have access to classified documents to prepare such a petition. Thus, the President’s constitutional duty is not only unimpaired by the access motion, it is wholly unaffected by it. Cf. Razzoli v. Fed. Bureau of Prisons, 230 F.3d 371, 376 (D.C.Cir.2000).
Neither of the two cases relied on by the court for its novel jurisdictional holding have force in this context, for at most they support an undisputed proposition that the President’s clemency power is fulsome, subject to few limits. Judge Learned Hand’s statement about the clemency power in United States ex rel. Kaloudis v. Shaughnessy, 180 F.2d 489, 491 (2d Cir.1950), is not as unqualified as the court suggests, for the judge acknowledged some limits, and, in any event, it is dictum in a case concerning the Attorney General’s discretionary power to suspend deportation. Heckler v. Chaney, 470 U.S. 821, 105 S.Ct. 1649, 84 L.Ed.2d 714 (1985), with its discussion of regulatory enforcement actions, is plainly distinguishable, for while the Supreme Court held that decisions not to initiate enforcement actions are presumptively unreviewable under the Administrative Procedure Act because they are “committed to agency discretion,” id. at 832, 105 S.Ct. 1649 (quoting 5 U.S.C. § 701(a)(2)), the Court went on to hold that “the presumption may be rebutted where the substantive statute has provided *61 guidelines for the agency to follow in exercising its enforcement powers,” id. at 832-33, 105 S.Ct. 1649. In erecting a jurisdictional bar that precludes federal court review of access motions to classified documents when the asserted reason for access is to assist in the preparation of a clemency petition, the court, unliké the Supreme Court in Chaney, fails to look to the underlying legal regime in the Protective Order to determine whether relief is available.
If the requested documents were not subject to the Protective Order, then the United States maintains Pollard would be required to proceed under the Freedom of Information Act (“FOIA”), 5 U.S.C. § 552 (2000). Caselaw under FOIA fails to reveal any suggestion that it is beyond the power of the federal courts to entertain requests for Executive Branch documents related to clemency proceedings. In fact, courts have analyzed requests for the Executive Branch to release documents related to individual clemency applications under FOIA, relying on the statutory exemptions to deny release of certain documents, but never raising any jurisdictional concerns. See, e.g., Binion v. U.S. Dep’t of Justice, 695 F.2d 1189, 1193-94 (9th Cir.1983); Crooker v. Office of Pardon Attorney, 614 F.2d 825, 828 (2d Cir.1980). While no case has expressly addressed the jurisdictional issue, as with analogous FOIA requests for information related to clemency proceedings, the request by Pollard’s counsel for access should be viewed under the regulatory regime in place to address those requests. The inconsistency between the federal courts exercising their power to adjudicate FOIA requests for information generated or compiled by the Executive Branch during the clemency process and federal courts lacking the power to adjudicate requests for access to documents filed with the district court that may be used in preparing a clemency petition is self-evident.
Moreover, when the court addressed the application of FOIA to general information about the clemency process, there was no hint of any jurisdictional obstacles. In Judicial Watch, Inc. v. Department of Justice, 365 F.3d 1108 (D.C.Cir.2004), the court refused to apply the presidential communications privilege, which is derived from separation-of-powers concerns and anchored in FOIA Exemption 5, 5 U.S.C. § 552(b)(5), to protect all documents authored by Executive Branch employees that are generated in the course of preparing clemency recommendations for the President. The court reasoned that the documents that were prepared in the Office of the Pardon Attorney were not in close proximity to the President and the exercise of his clemency power to warrant protection under the presidential communications privilege. 365 F.3d at 1114-15, 1120. The documents here are even farther removed from the President and the exercise of his clemency power, as they were generated in the course of a judicial proceeding and their use by Executive Branch employees in the clemency process is speculative at best. It is curious that the court relies on separation-of-power principles to preclude federal court review, ignoring the logical implications of our precedent. Because I conclude there is no jurisdictional bar to the court’s consideration of the access motion, I turn to the merits.
II.
The district court ruled that Pollard’s counsel.-did, not have a “need to know” because the President has access to the classified documents and can review them without assistance, there is no evidence that the President has asked Pollard’s counsel questions about the contents of the classified documents, and the President has access to memoranda from Pollard’s previous counsel that comments on the *62 classified documents. The district court denied Pollard’s motion for reconsideration, as well as his subsequent motion for modification. On appeal, the parties agree that the only issue as to the access motion is whether Pollard’s counsel has a “need to know” the contents of the classified documents. Whether the district court’s denial of access is reviewed de novo as a legal determination, as Pollard argues, cf. Phillips ex rel. Estates of Byrd v. Gen. Motors Corp., 307 F.3d 1206, 1210 (9th Cir.2002); United States v. Idaho, 210 F.3d 1067, 1072 (9th Cir.2000), or for abuse of discretion, as the United States argues, cf. United States v. Rezaq, 134 F.3d 1121, 1142-43 (D.C.Cir.1998), Pollard fails to show that the district court erred.
Although the President’s “quintessential and non-delegable” power to grant clemency does not affect the court’s jurisdiction in this instance, Judicial Watch, 365 F.3d at 1119, it significantly affects Pollard’s contention that his counsel has a “need to know” the contents of the classified documents filed with the district court. The “need-to-know” standard, which the parties agree is implicitly incorporated into the Protective Order, authorizes access to specified classified information only where one “requires access ... in order to perform or assist in a lawful and authorized governmental function.” Exec. Order 13,-292, 68 Fed.Reg. 15,315, 15,322. The President’s decision to grant or to deny clemency is such a function. See U.S. Const, art. II, § 2, cl. 1; Biddle v. Perovich, 274 U.S. 480, 486, 47 S.Ct. 664, 71 L.Ed. 1161 (1927). In seeking' to justify access as necessary “[t]o submit an effective clemency petition,” Br. of Appellant at 31, Pollard, however, conflates his petition for clemency with the President’s decision to grant or to deny clemency, much as the court does in erecting a jurisdictional bar; it is only the President’s decisionmaking process that is “a lawful and authorized governmental function.” Therefore, to come within the “need-to-know” standard, Pollard’s counsel must require access to assist the President’s determination and not simply to assist his client, which, by contrast, would be in the nature of a private act.
Simply asserting that one’s assistance is needed does not make it so, especially since executive clemency is a matter of grace, Woodard, 523 U.S. at 280-81, 118 S.Ct. 1244 (plurality), such that the President controls the process by which such decisions are made. The Justice Department’s pardon regulations, 28 C.F.R. §§ 1.1, 1.11 (2005), do not afford Pollard’s counsel a right to assist the President in making his clemency decision, let alone, as Pollard seems to seek, an opportunity to present an “effective petition” in response to the claimed unyielding opposition of Executive Branch officials to granting him clemency. Similarly, Executive Order 12,-958, as amended, does not provide his counsel a right of access equal to that of attorneys within the Justice Department or an enforceable right to access classified documents under the Protective Order. See Exec. Order 13,292, 68 Fed.Reg. 15,-315, 15,333. Further, absent the Protective Order, his counsel could not gain access to classified documents under FOIA, regardless of the status of counsel’s security clearance. See 5 U.S.C. § 552(b)(1). Thus, if Pollard’s counsel desires to assist the President’s clemency determination, then under the “need-to-know” standard, the President must seek his assistance and thereby involve counsel in the “lawful and authorized governmental function.” The record, however, does not reveal that either the President, who himself has access to the classified information, or his desig-nee has sought the assistance of Pollard’s counsel in considering the request for executive clemency.
*63 Consequently, although the district court’s adjudication of the access motion, even if it would have ordered access, does not itself infringe on the ■ separation of powers, the nature of executive clemency as a matter of Presidential grace means that under the “need-to-know” standard governing access to classified information under the Protective Order, it cannot be said that counsel requires access to assist the President. Whatever bias may exist against his cause, Pollard can point to no authority that would enable his counsel, under these circumstances, to have access to the classified documents he would require to present an “effective petition.” Accordingly, I would affirm the judgment denying the access motion based on the district court’s determination that Pollard’s counsel does not have a “need to know.”